### JONES v. FROST.

(Supreme Court, Appellate Division, First Department. March 9, 1900.)

BROKERS—CONTRACT OF EMPLOYMENT.

    On the issue as to a brokerage contract, plaintiff's testimony was that he met defendant in the office of a corporation of which defendant was treasurer, on calling to see the secretary; that the secretary was absent, and defendant asked him who he was; that he told him he wanted some information as to the stock of the corporation, which he alleged he had been employed to sell. The defendant said that he was fully informed of the situation, and that they had decided not to give any further information, unless plaintiff named the principals to whom he expected to sell; that he asked whether it would be necessary to see the secretary again, or whether defendant's statement was decisive, and defendant replied, "We are one, practically." On cross-examination, he testified that he knew the secretary, as such, had no authority to sell the stock, and that he did not say he had been authorized by anybody to sell it for him; that the secretary told him what the board of directors had done, but did not say he had been told to tell him; that he had never had any previous conversation with any other person than the secretary, but that he had told him to try to sell all the stock of the corporation. *Held* not to show a brokerage contract between defendant and plaintiff.

Appeal from trial term.

Action by Lewis L. Jones against Newberry H. Frost for compensation for services. From a judgment dismissing complaint (53 N. Y. Supp. 573), plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

Alexander S. Bacon, for appellant.

James R. Soley, for respondent.

PATTERSON, J. The complaint in this action was properly dismissed. The appellant is precluded from making any criticism upon the procedure at the trial, by which the case was allowed to go to the jury for a general verdict, and a motion for a nonsuit reserved until after that verdict was rendered. He stipulated that that course should be pursued. The only question before us relates to the correctness of the decision of the trial judge in granting the nonsuit.

The action was brought to recover brokerage charges which the plaintiff claimed to have earned by making a sale for the defendant of certain shares of stock of the Atlantic Avenue Railroad Company.

The allegations of the complaint are, in substance, that all of the owners of the capital stock of that company sold their shares thereof to a syndicate of buyers; that the officers of the company, and especially the president thereof, one William Richardson, and the secretary thereof, one William J. Richardson, represented the owners, and had authority to offer the shares for sale; and that the defendant, Frost, who was the treasurer of the company, with the two Richardsons, were the agents of the holders of the stock. It is further alleged that the sale was made to the purchasers by the plaintiff, as broker, at the request of the defendant, and for him and on his behalf, and that the defendant is indebted to the plaintiff on account of commissions on such sales, and that the services of the plaintiff in effecting the sale were reasonably worth a sum stated. The defendant, in his answer, denies that he acted as the representative of the holders of the stock of the Atlantic Avenue Railroad Company, or any of them, on the sale of such stock, and that he has no knowledge or information sufficient to form a belief in respect of the allegations of the complaint concerning the sale of the capital stock of the company to a syndicate of buyers, or that such sale was made through the agency of the officers of the company, as alleged in the complaint. He admits that he sold 830 shares of the capital stock belonging to him, and that at the same time other holders of stock of the railroad company sold their shares to the same purchaser. The proof shows that the shares were sold about a year after the plaintiff claims to have been employed, and that it was then made through one McCabe.

As the defendant is sued individually to recover commissions upon the sale of his shares, it became incumbent upon the plaintiff to prove that he was employed by the defendant to effect a sale. He did not attempt to show any independent contract of employment actually made with the defendant for the sale of the defendant's holdings, separated from the other shares, but he sought by his proof to connect the defendant with a contract of employment alleged to have been made with the other officers of the Atlantic Avenue Railroad Company, from whom he claimed to have received authority to sell all the shares of the capital stock of the company, including the defendant's. He swears that he never saw the defendant but once, and never conversed with him respecting the subject of the sale of the shares, except on that one occasion, which was six months after he had first spoken with the secretary of the company concerning the sale of the stock of the road. All that the plaintiff testifies to, to sustain his contention, is that he casually met the defendant at the office of the railroad company when he called upon Mr. Richardson, the secretary, and found that gentleman absent. He declares that, not being able to see the secretary when he inquired for him, the defendant came forward, and asked who he was, that he told him, and stated he wanted some information concerning the stock. The defendant said that it was not convenient for Mr. Richardson to give the information, to which the plaintiff replied that it was very strange, as the secretary had promised to give it, and it would have saved annoyance if the information had not been given through a third party. The defendant said that he could hardly consider him-

self a third party, as he was a stockholder, and they had decided that they had given so much information that they would not give more, unless the plaintiff named his principals. The defendant also said that he was fully informed as to what had been going on between the secretary and the plaintiff, and he understood fully the situation, and they had concluded not to give the plaintiff any further information unless he named his principals. The only thing further that passed between the plaintiff and the defendant, according to the plaintiff's story, is that he asked the defendant whether it was worth while to see the secretary again, or whether his statement was decisive, and the defendant said, "We are one, practically," and thereupon the defendant turned and left the office. On cross-examination, the plaintiff gave his own understanding of the conversation between himself and William J. Richardson. He says that he knew Richardson's office as secretary of the company did not confer authority to sell. He further testifies that "he [Richardson] did not say to me that he had been authorized by anybody to sell the property for them. He told me what the board of directors had done. He did not tell me the board of directors had told him to tell me. He merely, as a favor or otherwise, gave me that information, that the board of directors had fixed upon a certain price, and would sell if they got that." The substance of this casual conversation does not constitute proof of an authority emanating from the defendant to the plaintiff to sell his or any other shares. The plaintiff testified that at no previous time to seeing the defendant had he any conversation relative to the sale of the shares with any person other than the secretary, William J. Richardson. He said that Richardson had told him to try to sell all of the stock of the Atlantic Avenue Railroad Company at 200, and that he spoke with Richardson about a commission, and it was suggested that the plaintiff should be paid by the sellers. That is about the substance of the evidence upon the subject of employment.

The inference the plaintiff seeks to deduce from the conversation he had with the defendant is that the defendant knew that the secretary of the company had employed him to find a purchaser for all the shares of all the stockholders of the company. There is nothing in the conversation between the parties that justifies such a decision. When the defendant stated that he was fully informed of what had been going on between the secretary and the plaintiff, and that he fully understood the situation, he must have referred to the condition, as the plaintiff himself testified to it, namely, that Richardson had not declared that he was authorized by anybody to sell shares for them, and that certain information had merely been given by the secretary, without any authority delegated to him to employ anybody to act for the owners of the shares in making a sale of them. It is difficult to see how or why the defendant should have understood from the secretary more than the plaintiff himself did. It cannot be assumed that, by the general remarks of the defendant, he was recognizing an authority in the plaintiff which the plaintiff himself did not understand the secretary was authorized to confer upon him. The evidence was altogether insufficient to charge a liability upon the defendant for the claim asserted in this action.

The learned judge, in deciding the motion for a nonsuit, placed it upon the ground that the sale of the shares was not effected by the plaintiff, but by a third person, who was not acting as the agent of the plaintiff. Without inquiring into the condition of the evidence on that branch of the case, we are satisfied that the proof failed to show an employment emanating from, or ratified by, the defendant, and that, therefore, the nonsuit was properly granted.

The judgment must be affirmed, with costs. All concur.